1  Gregory C. Simonian, Esq. (SBN 131162)
   Valerie S. Higgins, Esq. (SBN 238323)
2  CASAS RILEY & SIMONIAN, LLP
   One First Street, Suite 2
3  Los Altos, CA 94022
   (650) 948-7200
4  (650) 948-7220 FAX
   gsimonian@legalteam.com
5  vhiggins@legalteam.com

6  Attorneys for Defendant and Counter Claimant
   Scott E. Uhrig, individually and doing business as, Whiterock
7  Partners

8                 UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 **CONNET & COMPANY LLC**, a Delaware        Case No.:
   Limited Liability Company
11
                                              **ANSWER AND COUNTER CLAIM OF**
12              Plaintiff                      **SCOTT E. UHRIG, INDIVIDUALLY AND**
                                              **DOING BUSINESS AS WHITEROCK**
13 v.                                          **PARTNERS**

14 **SCOTT E. UHRIG**, Individually, **WHITE-**  **JURY DEMANDED**
   **ROCK PARTNERS**, a Texas D/B/A,
15 **STEPHANIE A. YOUNG**, Individually,
   **TINA C. MOLOCK**, Individually, and
16 **DOES 1-50**, Inclusive,

17              Defendant.

18

19      Upon knowledge with respect to himself and his own acts and information and belief as to all

20 other matters, Defendant/Counter-Claimant SCOTT UHRIG, individually, and "WHITEROCK

21 PARTNERS" (a "doing business" name of Scott E. Uhrig)(jointly and severally, "Uhrig") files this

22 Answer to the Complaint filed on April 1, 2008, in the Superior Court of the State Of California in

23 and for the County of San Mateo (the "Complaint") by Plaintiff CONNET & COMPANY LLC

24 ("Connet"), and asserts this Counterclaim against Connet, as follows:

25                              **I.**
26            **UHRIG'S ANSWER TO THE ALLEGATIONS IN**
              **PARAGRAPHS 1 THROUGH 65 OF THE COMPLAINT**
27
   Defendant Scott E. Uhrig, individually and dba Whiterock Partners (hereafter "Uhrig"),

28

1   answers the Complaint of Plaintiff on file herein as follows:

2       1.      Answering paragraphs 1, 2, 4, 5 and 8 of the Complaint, Uhrig admits the allegations

3   contained therein.

4       2.      Answering paragraphs 21, 26, 27, 28, 29, 31, 32, 33, 34, 37, 38, 39, 40, 41, 43, 44, 45,

5   46, 47, 48, 52, 53, 54, 56, 57, 58, 59, 60, 61, 63, 64 and 65 of the Complaint, Uhrig denies the

6   allegations contained therein.

7       3.      Answering paragraphs 7, 17, 24, 36, 50 and 51 of the Complaint, Uhrig is without

8   knowledge or information sufficient to form a belief as to the truth of the allegations contained

9   therein, and on that basis denies those allegations.

10      4.      Answering paragraph 3 of the Complaint, Uhrig, admits that he maintains his home office

11  at 3507 Scenic Hills Drive, Austin, Texas, and does business primarily in the state of Texas. Uhrig

12  no longer maintains a home office at 4507 Balcones Drive. Uhrig is without knowledge or

13  information sufficient to form a belief as to the truth of the remaining allegations of paragraph 3 and

14  on that basis denies those allegations.

15      5.      Answering paragraph 6 of the Complaint, Uhrig admits that Plaintiff describes "Uhrig,

16  Whiterock, Young and Molock" as "Defendants."

17      6.      Answering paragraph 9 of the Complaint, Uhrig admits that he was employed as a

18  recruiter by Plaintiff, but cannot recall the exact dates. Uhrig admits that he signed an employment

19  agreement with plaintiff, but cannot recall the date or specific terms of the agreement. Uhrig admits

20  that Plaintiff represented Uhrig to the public as a "partner" or partial equity owner of Plaintiff

21  business. Uhrig is without knowledge or information sufficient to form a belief as to the truth of the

22  remaining allegations of paragraph 9 and on that basis denies those allegations.

23      7. Answering paragraph 10 of the Complaint, Uhrig admits that Young was employed by

24  Plaintiff as an associate for some period of time, but cannot recall the exact dates. Uhrig is without

25  knowledge or information sufficient to form a belief as to the truth of the remaining allegations of

26  paragraph 10 and on that basis denies those allegations.

27      8. Answering paragraph 11 of the Complaint, Uhrig admits that Molock was employed by

28  Plaintiff as an executive assistant for some period of time, but cannot recall the exact dates. Uhrig

1   admits that Molock signed an employment agreement with plaintiff, but does not recall the terms of

2   that agreement. Uhrig is without knowledge or information sufficient to form a belief as to the truth

3   of the remaining allegations of paragraph 11 and on that basis denies those allegations.

4      9. Answering paragraph 12 of the Complaint, Uhrig admits that following his resignation from

5   plaintiff on or about May 6, 2003, he started "Whiterock Partners," which is an executive search

6   business focused on recruiting officers for technology and business service companies. Uhrig admits

7   that he started using the "Whiterock Partners" name after his "employment" association with

8   Plaintiff ended. Uhrig is without knowledge or information sufficient to form a belief as to the truth

9   of the remaining allegations of paragraph 12 and on that basis denies those allegations.

10     10. Answering paragraph 13 of the Complaint, Uhrig denies the allegations as to himself.

11   Uhrig is without knowledge or information sufficient to form a belief as to the truth of the remaining

12   allegations of paragraph 13 and on that basis denies those allegations.

13     11. Answering paragraph 14 of the Complaint, Uhrig admits that after his resignation from

14   plaintiff, he contacted defendants Molock and Young. Uhrig is without knowledge or information

15   sufficient to form a belief as to the truth of the remaining allegations of paragraph 14 and on that

16   basis denies those allegations.

17     12. Answering paragraph 15 of the Complaint, Uhrig admits that after his resignation from

18   plaintiff, defendant Young performed some work for him. Uhrig is without knowledge or

19   information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15

20   and on that basis denies those allegations.

21     13. Answering paragraph 16 of the Complaint, Uhrig admits that defendant Molock

22   performed some work for him, including work in January 2004. Uhrig is without knowledge or

23   information sufficient to form a belief as to the truth of the remaining allegations of paragraph 16

24   and on that basis denies those allegations.

25     14. Answering paragraph 19 of the Complaint, Uhrig admits that a contract existed between

26   he and plaintiff and Molock and plaintiff. Uhrig is without knowledge or information sufficient to

27   form a belief as to the truth of the remaining allegations of paragraph 19 and on that basis denies

28   those allegations.

Cross Riley & Stroumert, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 948-7200

15. Answering paragraph 20 of the Complaint, Uhrig denies that he breached any agreement or contractual obligation with plaintiff. Uhrig is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 20 and on that basis denies those allegations.

16. Answering paragraph 23 of the Complaint, Uhrig admits a contract existed between he and plaintiff and Molock and plaintiff. Uhrig is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 23 and on that basis denies those allegations.

17. Answering paragraph 24 of the Complaint, Uhrig admits that a contract existed between he and plaintiff and Molock and plaintiff. Uhrig is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 24 and on that basis denies those allegations.

18. Answering paragraph 25 of the Complaint, Uhrig denies that he breached his contract with plaintiff. Uhrig is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 25 and on that basis denies those allegations.

19. Answering paragraphs 18, 22, 30 35, 42, 49, 55 and 62 of the Complaint, Uhrig incorporated his responses as though fully set forth herein.

## II.
## UHRIG'S AFFIRMATIVE DEFENSES
## TO THE ALLEGATIONS IN THE COMPLAINT

20. Uhrig has not completed investigation into the facts of Plaintiff's claims, only some of the parties have exchanged written discovery, and oral discovery has not yet commenced. Uhrig intends to conduct written and oral discovery to defend against Connet's claims and also investigate facts to support his affirmative claims against Plaintiff. Therefore, Uhrig specifically reserves the right to modify, amend, or supplement the affirmative defenses herein.

### First Affirmative Defense

21. Section 16600 of the California Business and Professions Code and/or the public policy of the State of California bars, in whole or in part, Connet's claims to the extent the contract(s) upon

1   which Plaintiff bases its claims restrain anyone from engaging in a lawful profession, trade, or

2   business of any kind.

### Second Affirmative Defense

4       22.     Application of California law to conduct by two (2) persons wholly outside the State of

5   California violates due process; thus, barring Plaintiff's claims in whole or in part.

### Third Affirmative Defense

7       23.     Plaintiff's Complaint, and each purported claim or cause of action therein, fails to state a

8   claim upon which relief can be granted.

### Fourth Affirmative Defense

10      24.     Applicable statutes of limitation (including without limitation California Code of Civil

11  Procedure §§ 337, 338, 339, 340 and 343) bar in whole or in part the causes of action pleaded by

12  Connet against Uhrig.

### Fifth Affirmative Defense

14      25.     The doctrine of unclean hands bars, in whole or in part, Connet's claims against Uhrig.

### Sixth Affirmative Defense

16      26.     The doctrine of laches bars, in whole or in part, Connet's claims against Uhrig.

### Seventh Affirmative Defense

18      27.     The doctrine of waiver bars, in whole or in part, Connet's claims against Uhrig.

### Eighth Affirmative Defense

20      28.     One or more doctrines of estoppel bars, in whole or in part, the claims of Connet against

21  Uhrig.

### Ninth Affirmative Defense

24      29.     Connet's failure to exercise reasonable care to mitigate its alleged damages bars, in whole

25  or in part, Plaintiff's claims against Uhrig.  Alternatively, Connet's damages, if any, should be

26  reduced by its failure to mitigate.

27

28

Casas Riley & Simonian, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 948-7200

### Tenth Affirmative Defense

30.    Uhrig's acts or omissions constituted and were consistent with legitimate business practices and/or were otherwise privileged and/or justified.

### Eleventh Affirmative Defense

31.    Failure(s) of condition(s) precedent bars, in whole or in part, Connet's claims against Uhrig.  Those failures include: (a) lack of pre-suit demand; and (b) failure to maintain secrecy of so-called trade secrets; and (c) failure by Connet to perform certain conditions precedent imposed by the parties' association agreement to the duties Connet owed Uhrig.

### Twelfth Affirmative Defense

32.    The doctrine of failure of consideration bars, in whole or in part, Connet's claims against Uhrig.

### Thirteenth Affirmative Defense

33.    Other persons or entities, including, but not limited to, third persons and/or Connet, its employees, servants, or representatives, were careless, negligent, legally responsible and/or otherwise at fault, in whole or in part, for the damages, if any, alleged by Connet in the Complaint. Should the Court or trier of fact find any liability in Connet's favor, or settlement or judgment against Uhrig, an apportionment of fault be made among all other parties or persons at fault.  Uhrig likewise requests a judgment and declaration of partial indemnification and contribution against all other persons or parties in accordance with the apportionment of fault.

### Fourteenth Affirmative Defense

34.    Uhrig is entitled to an offset and/or recoupment against any judgment that may be entered in Connet's favor by reason of any alleged misrepresentation or concealment of facts, breach of duty, violation of the covenant of good faith and fair dealing, and any other allegedly wrongful conduct and breaches as alleged in the Counterclaim or otherwise.

### Fifteenth Affirmative Defense

35.    Connet's acknowledgment, ratification, consent to, waiver, or acquiescence in any alleged acts or omissions of Uhrig (denied herein) bars, in whole or in part, the causes of action

Coxe Raley & Simonian, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 941-7200

pleaded by Connet in the Complaint.

### Sixteenth Affirmative Defense

36.     Connet's non-performance of its own obligations bars, in whole or in part, the causes of action pleaded against Uhrig in the Complaint.

### Seventeenth Affirmative Defense

37.     Connet's fraud, misrepresentations and material omissions in procuring the purported "employment" agreement or contract bar, in whole or in part, the causes of action alleged against Uhrig in the Complaint and render void any such agreements and  all  alleged obligations thereunder.

### Eighteenth Affirmative Defense

38.     As to any and all acts or omissions alleged against Uhrig in the Complaint, Uhrig performed the same in good faith, without malice, or any evil motive, whatsoever, and to the best of Uhrig's belief, such acts or omission were based upon legally sufficient justification, and were proper at the time performance.  Such cause of action are, therefore, barred, in whole or in part, to the extent that any one of them depend upon Connet proving a lack of good faith, insufficient justification, or the presence of malice/evil motive, fraud or negligent misrepresentation.

### Nineteenth Affirmative Defense

39.     To the extent that the Complaint purports to allege a claim under California Business and Professions Code section 17200, *et seq.,* and/or California Civil Code section 3426.1 *et seq.*,  Connet fails to allege facts sufficient to state a claim upon which relief can be granted and/or to obtain discovery.

### Twentieth Affirmative Defense

40.     The relief sought by Connet under the California Business and Professions Code section 17200 *et seq.* and/or California Civil Code section 3426.1 *et seq.*  violates Uhrig's constitutional rights under provisions in the California State Constitution, as well as the United States Constitution; including, but not limited to, the due process clause to the Fifth and Fourteenth amendments thereto.

### Twenty-First Affirmative Defense

41.     Any award of punitive or exemplary damages against Uhrig under California law,

Coates Riley & Sorenson, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 966-7200

generally, or as applied under California law to this specific case, violates Uhrig's constitutional

rights under provisions in the California State Constitution, as well as the United States Constitution;

including, but not limited to, the due process clause to the Fifth and Fourteenth amendments thereto.

### Twenty-Second Affirmative Defense

42.     Connet's failure to allege facts sufficient to either state a claim for punitive or exemplary

damages or to show Uhrig's oppression of and fraud or malice on Plaintiff, as required by California

Civil Code section 3294, bars any such claims as set forth in the Complaint, whether in whole or in

part.

### Twenty-Third Affirmative Defense

43.     The claims asserted against Uhrig in the Complaint are barred in whole or in part by the

doctrine of illegality and/or are void as against public policy.

### Twenty-Fourth Affirmative Defense

44.     The doctrines of impossibility and/or impracticality bars, in whole or in part, the claims

alleged against Uhrig in the Complaint.

### Twenty-Fifth Affirmative Defense

45.     To the extent that Connet prevented Uhrig from performing professional duties during the

association with Plaintiff, said prevention bars, in whole or in part, any claims alleged against Uhrig

in the Complaint based upon an alleged failure to perform.

### Twenty-Sixth Affirmative Defense

46.     As to each applicable cause of action alleged against Uhrig in the Complaint, Uhrig's acts

or omissions, if any, did not constitute the cause in fact or proximate cause of any of Plaintiff's

supposed damages.

### Twenty-Seventh Affirmative Defense

47.     As to each cause of action alleged against Uhrig in the Complaint, by its past conduct,

declarations, deeds and judgments, Connet acted with the intent to deliberately lead Uhrig into a

position of helplessness, which should therefore estop and bar it from complaining herein against

Cross Riley & Simmons, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 941-7200

1  Uhrig. Uhrig reasonably believed Connet's representations and acted upon that belief to Uhrig's

2  extreme detriment. Thus, as to permit Connet to prevail on its claims would work an injustice,

3  Uhrig respectfully requests the Court to protect it in equity by decreeing that Plaintiff waived its

4  rights, if any, to recovery against Uhrig.

**Twenty-Eighth Affirmative Defense**

5

6  48.    The Complaint fails to plead fraud with the specificity required by FRCP 9(b).

**Twenty-Ninth Affirmative Defense**

7

8  49.    The claims asserted against Uhrig in the Complaint are barred in whole or in part by the

9  doctrine of prior breach by Connet.

**Thirtieth Affirmative Defense**

10

11  50.    The Complaint fails to plead special damages with the specificity required by FRCP 9(g).

12  **Thirty-First  Affirmative Defense**

13

14  51.    The Complaint fails to plead any claims against the "Does 1-50" Defendants and such

    allegations should therefore be struck.

15

**Thirty-Second  Affirmative Defense**

16

17  52.    To the extent the Plaintiff is unable to identify with specificity the "trade secrets" which

18  form the bases of the Complaint without the aid of any discovery in the case, those claims violate

19  FRCP 11.

**Thirty-Third Affirmative Defense**

20

21  53.    Venue does not properly lie in this Court as to each defendant and each claim and/or

22  venue in this Court is inconvenient.

23  **Thirty-Fourth Affirmative Defense**

24  54.    As alleged more fully above, various portions of the Complaint are so vague or

25  ambiguous that they should be re-plead in order to put Uhrig and the Court on notice of the claims

26  being asserted.

27  //

28  //

### Thirty-Fifth Affirmative Defense

55.   The Complaint fails to plead the specific act or act(s) sought to be enjoined and, therefore, Plaintiff is barred from obtaining preliminary or permanent injunctive relief.

### Thirty-Fifth Affirmative Defense

56.   The claims in the Complaint are barred, in whole or in part, by the doctrine of ratification.

### Thirty-Sixth Affirmative Defense

57.   The claims in the Complaint are barred, in whole or in part, by the doctrine of novation.

### Thirty-Seventh Affirmative Defense

58.   The claims in the Complaint are barred, in whole or in part, by the doctrine of in pari delicto.

### Thirty-Eighth Affirmative Defense

59.   To the extent Plaintiff claims that Uhrig tortiously interfered with a contract with and/or prospective relation with respect to the other Defendants, such  claims are barred in whole or in part by the doctrine that the underlying contract and/or purported prospective relation were invalid, void, or otherwise unenforceable.

### Thirty-Ninth  Affirmative Defense

60.   To the extent Plaintiff claims breaches of covenants not to compete and/or not to work for any person or entity other than Plaintiff, such claims are barred in whole or in part because such covenants are invalid or unreasonable.

### Fortieth  Affirmative Defense

61.   The Plaintiff's claims are barred in whole or in part because Plaintiff's alleged damages are speculative and/or were not reasonably forseeable.

### Forty-First  Affirmative Defense

62.   To the extent Plaintiff lost any business or otherwise suffered damages to its business or client relationships  during the time period alleged by Plaintiff to be relevant, Plaintiff's own poor

Cooley Haley & Simmerman, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 948-7200

and/or improper business practices – and not the conduct of Uhrig – were the proximate cause of Plaintiff's alleged damages.

### Forty-Second Affirmative Defense

63.    The acts or omission of persons or entities other than Uhrig were the proximate and/or supervening cause of the Plaintiff's damages.

### Forty-Third Affirmative Defense

64.    The acts or omission of persons or entities other than Uhrig were the proximate and/or supervening cause of the Plaintiff's damages.

WHEREFORE, Defendants Prays that Plaintiff take nothing against them by way of its complaint, that these answering Defendants have judgment for costs of suit and attorney's fees incurred herein, together with such other and further relief as the court may deem just and proper.

### III.

### COUNTERCLAIMS

Pursuant to FRCP Rule 13, Scott E. Uhrig, individually and dba Whiterock Partners ("Uhrig"), alleges the following counterclaim against Plaintiff and Counterclaim Defendant Connet & Company, LLC ("Connet"):

65.    Under FRCP Rule 8(e)(2), Uhrig's counterclaim allegations and claims are made jointly, severally, alternatively and hypothetically (as the case may be).

66.    All conditions precedent to Uhrigs recovery on his counterclaims have occurred, been met, been waived, or otherwise satisfied.

67.    All allegations and sections of this pleading shall be deemed to be incorporated by reference into all other sections of this pleading. All captions are provided for convenience only.

68.    Diversity jurisdiction exists with respect to these counterclaims in so far as: (a) counterclaimant is a citizen of the state of Texas and counterclaim Defendant is a citizen of the state of California; (b) the amount in controversy with respect to the counterclaims exclusive of interest and costs exceeds $75,000.

//

Cotton Riley & Simmons, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 948-7200

## IV.

## BACKGROUND FACTS

**A.    Connet Recruits Uhrig to Leave His Job and Join Connet as a Partner with Equity Participation**

69.    In or about 2001, Counterclaimant Scott Uhrig was a principal member of the Hight Technology, Internet & E-Commerce Practices group of TMP Worldwide Executive Search, which was at that time the third largest executive search firm in the United States.

70.    Uhrig was approached by Mel Connet on behalf of counterclaim defendant Connet & Company LLC ("Connet") and, in a series of communications (the "Communications"), asked Uhrig to join Connet as a "partner" in the firm.

71.    During the Communications, Connet represented to Uhrig in words or in substance that Connet was "new kind of search firm" retained to do "mission critical" searches for CEO's, CFO's, Presidents, and other senior-level executives for high tech companies.  Connet represented to Uhrig in words or in substance that the firm:

- Was "partner owned";

- Practiced knowledge sharing;

- Emphasized cooperation;

- Maintained a "virtual" office structure, which would substantially reduce overhead costs and would allow the firm's partners to live and work where they choose; and

- Provided a compensation structure which discouraged "candidate hoarding" and "client poaching" through the sharing of the equity in clients or their portfolio companies which the firm received from its clients as part of its search fees.

Connet also represented to Uhrig in words or in substance that Jane Carmena was recent "partner" addition to the firm.  Finally, Connet represented to Uhrig in words or in substance that Connet had a detailed business plan to grow to nine partners and thirty people by the end of fiscal year 2001.  The foregoing representations are jointly and severally referred to as the "Connet Representations."

//

//

Cassin Riley & Sansiman, LLP
One Fast Street, Suite 2
Los Altos, CA 94022
(650) 948-7200

72.    The Connet Representations were reiterated in Connet's web-site at the time.  The website represented, for example, that:

- Connet possessed "an innovative organizational design and culture…which encourages partnership and sharing;"
- "We [Connet] value good partnership, teamwork, and sharing;"
- "We [Connet] value egalitarian, performance-based culture;"
- "Our governance model, based on a one partner, one vote philosophy, fosters a partnership culture…"
- "Our compensation systems are equitable yet represent one of the richest, performance-based remuneration plans in the industry."

In a section entitled "Join Us," Connet's web-site represented that "[W]e want partners whom we'd trust with our own assignments…[and who] truly embrace our philosophy and culture of partnership and sharing."  The foregoing representations are jointly and severally referred to as the "Connet Website Representations."

73.    Connet followed the Connet Representations and the Connet Website Representations with specific offers and/or promises to Uhrig if Uhrig agreed to leave TMP and join Connet (the "Connet Promises").  The Connet Promises included in words or in substance:

- The promise that Uhrig would be an equal partner in Connet (and share in the ownership, control, and profits of Connet with Mel Connet and Jane Carmena), receive a one-third equity interest in Connet, and be relieved of any "buy-in" costs due to Uhrig's willingness to join Connet at the ground floor.  All three partners' equity interests would then be subject to *pro rata* dilution as new partners were added to the Connet team (the "Connet Equity Promise");
- The promise that Uhrig would receive a seventy percent interest in the equity participations Connet received from clients serviced by Uhrig, with another twenty percent being distributed to the members of the team which worked on that client matter, and the remaining ten percent to be distributed to a partner pool (in which the partners would share *pro rata* (the "Equity Share Promise"); and

- The promise that Uhrig would receive fifty percent of the gross revenues from all cash fees received from the client matters on which Uhrig served as the lead, with the remaining fifty percent to be paid to Connet (which would in turn be responsible for paying all of the expenses of the business and distributing the remaining profits to the partners)(the "Partner Splits Promise"); and

- The promise that Uhrig would receive a guaranteed "draw" from Connet which would then be offset against the total monies Uhrig was to receive pursuant to the Partners Splits Promise; and

- The promise that Uhrig would be able to continue to develop a book of business on his own (the "Client Development Promise").

74.   Connet made the Connet Representations, the Connet Website Representations, and/or the Connet Promises (jointly and severally, the "Connet Inducements") with an intent to induce Uhrig to leave TMP and join Connet.

75.   The Connet Inducements were material and were reasonably relied upon and accepted by Uhrig to leave TMP and join Connet.

76.   Uhrig joined Connet in or about march 2001.

77.   Promptly thereafter, in a series of press releases and quotes to the public, Connet announced that Uhrig "has joined the firm as a partner" and touted Uhrig's "professional integrity and collaborative style."

78.   Connet continued to hold Uhrig out to the public as a Connet "partner."

79.   Indeed, the "Connet & Company LLC 2001 Annual Report to Clients" contained in Connet's website was "signed" by three designated "partners" -- Mel Connet; Jane Carmena; and counterclaimant Scott Uhrig.

**B.   Connet Fails to Deliver What it Represented and Promised**

80.   Life as a Connet "partner" proved to be much different than Connet represented and/or promised in the Connet Inducements.

//

//

Cross Riley & Sanderson, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 948-7200

81.     Management of the business was far from the one partner/one vote, egalitarian, sharing, cooperative team described by the Connet Inducements. To the contrary, Mel Connet proved to be autocratic, arbitrary, and the only person whose "vote" seemed to count.

82.     Despite the Connet Equity Promise, Connet never provided Uhrig evidence of his ownership of one-third of the company as of the date of his arrival.

83.     Despite the Equity Share Promise, none of the equity from any of the client fees was distributed to Uhrig, to the other team members, and/or to the partner "pool."

84.     Despite the Partner Splits Promise, Uhrig did not receive fifty percent of the gross revenues generated for accounts serviced by Uhrig as the "lead." Rather, Connet purported to charge Uhrig for "expenses" which far reduced the amount Uhrig received from his placement activities.

85.     Despite the Client Development Promise, Connet insisted that Uhrig work on client matters originated by Mel Connet and then directed that Uhrig would only receive a fifty percent "credit" for such work when calculating the cash due under the Parnter Splits Promise. This also substantially reduced the amount of cash Uhrig received from his placement activities.

86.     Thus, far from enjoying life at the ground floor of a "new" type of partner-owned, partner run, collaborative and share the wealth firm, Uhrig found himself at the mercy of a "my way or the highway" manager who short-changed his "partners" at every step in the process.

        C.     **Connet Refuses to Make Good, and Uhrig Leaves**

87.     Based upon the Equity Promise, the Equity Pool Promise, and/or the Partner Splits Promises, Uhrig was entitled to receive substantially more cash and other consideration from his work and relationship with Connet than he actually received (the "Unpaid Compensation").

88.     The amount of such cash and the value of such other consideration comprising the Unpaid Compensation is presently unknown, but is believed to be over one million dollars.

89.     Uhrig tried to obtain the benefit of his bargain with Connet – and make Connet the type of firm he had been told it already was – through numerous phone calls and other communications with Mel Connet and the other "partners."

90.     But, despite his efforts and demands, Connet failed to make the changes required to live

1   up to its promises and representations to Uhrig and the public.

2      91.    In fact, rather than work with Uhrig in good faith and treat him fairly, Connet retaliated

3   against Uhrig by declaring that Uhrig would no longer receive a draw against the monies which were

4   or would be due to him from Connet.

5      92.    Left with no other choice, Uhrig left Connet in May, 2003 and began undertaking search

6   assignments under his new "d/b/a," Whiterock Partners.

7      93.    Uhrig now sues to obtain compensation and other relief for the damages he suffered for

8   being fraudulently induced to join Connet in the first place and for being deprived of the Unpaid

9   Compensation he was promises he would receive when he got there.

10                                          **V.**

11                                **CLAIMS FOR RELIEF**

12      **A.    FIRST CAUSE OF ACTION**
            **(Breach of Contract/Promissory Estoppel)**

13

14      94.    Uhrig and Connet were parties to one or more valid and binding contracts (jointly and

15   severally, the "Contract").

16      95.    In addition or in the alternative, injustice cannot be avoided unless the Connet Promises

     are enforced.

17      96.    Connet materially breached the Contract and/or the Connet Promises by, among other

18   things, breaching: the Connet Equity Promise; the Equity Share Promise; the Partner Splits Promise;

19   the Client Development Promise; and/or the implied covenant of good faith and fair dealing towards

20   Uhrig (jointly and severally, the "Wrongful Acts").

21      97.    Uhrig suffered substantial damages as a direct result of Connet's breaches of the Contract

22   and/or of the Connet Promises.

23      98.    Uhrig therefore asks the court to award Uhrig compensatory damages and all other relief

24   to which Uhrig proves entitled relating to Connet's breaches.

25      **B.    SECOND CAUSE OF ACTION**
            **(Breach of Fiduciary Duty)**

26

27      99.    Connet owed a fiduciary duty and a duty of trust to Uhrig.

28   //

Cooper Riley & Sorenson, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 326-7200

1    100.    Connet breached its fiduciary duties and duty of trust to Uhrig by, among other things,

2    committing the Wrongful Acts.

3    101.    Connet's breaches of fiduciary duty caused injury to Uhrig and/or gave an unfair

4    advantage or benefit to Connet.

5    **C.    THIRD CAUSE OF ACTION**
     **(Unjust Enrichment)**

6    102.    Uhrig conferred substantial benefits on Connet at Uhrig's expense.

7    103.    The expenses were incurred as a result of the inequitable or fraudulent conduct of Connet

8    and/or it would be unjust under the circumstances for Connet to retain the benefits without paying

9    Uhrig the fair value for them.

10   **E.    FOURTH AND FIFTH CAUSE(S) OF ACTION**
     **(Intentional and/or Negligent Misrepresentation)**

11

12   104.    Connet made the Connet Representations and/or the Connet Website Representations

13   intentionally and/or negligently, knowing that they were being relied upon by Uhrig to leave TMP

14   and join Connet.

15   105.    The Connet Representations and/or the Connet Website Representations were material,

16   and were relied upon by Uhrig to his detriment.

17   106.    Uhrig has since discovered that the Connet Representations and/or the Connet Website

18   Representations were false and misleading.

19   107.    Connet therefore committed intentional and/or negligent misrepresentation.

20   108.    Uhrig has suffered damages as a proximate result of his reliance on the Connet

21   Representations and/or the Connet Website Representations and asks the Court to award him such

22   actual, compensatory, special, and other damages allowed by the law and the facts.

23   **E.    SIXTH CAUSE OF ACTION**
     **(Accounting)**

24

25   109.    This Court should direct Connet to account for all revenues received, expenses paid,

26   equity interests received, and payments or distributions of case or any other asset of any kind made

27   to any person from March 2001 through the time of trial so that Uhrig, the Court, and/or the jury:

28   //

(a)     Can adequately determine the amount of cash Uhrig should have received under the Partner Splits Promise, the value of the equity interests Uhrig should have received pursuant to the Equity Participation Promise, and/or the value of the equity interest in Connet itself which Uhrig should have received pursuant to the Connet Equity Promise; and

(b)     Can trace the cash and/or equity interests which should have been paid over to Connet to the recipients of those assets.

### F.     SEVENTH CAUSE OF ACTION
### (Misappropriation/Misuse of Uhrig Accounts)

110.     Without Uhrig's permission and without paying for same, on one or more occasions after Uhrig left Connet, Connet used Uhrig's passwords to gain access to Uhrig's subscription based date-base accounts, such as Zoom Info, Jigsaw, and Hoovers.

111.     Connet is liable in damages and other relief for such conduct under theories of conversion, misappropriation, misrepresentation, and other claims.

## VI.

## PRAYER FOR RELIEF

112.     Based upon the foregoing and the law and the facts to be presented at trial and other hearings, Uhrig respectfully requests that the Court enter onf or more orders and a judgment as follows:

(a)     Directing that Connet take nothing on its claims against Uhrig;

(b)     Awarding Uhrig the following relief against Connet, jointly and severally:

1.     An award of such other actual, compensatory, and/or special damages against the Counter Defendant Connett in favor of Counterclaimant Uhrig as are available under the law and the facts, including without limitation damages for: (a) the amount of cash and other compensation Urhig should have received if Connet had not breach its promises and/or duties; (b) the highest value of the equity interests received by Connet which should have been assigned or paid over to Uhrig; (c) the difference between the amount of compensation Uhrig would have received had he stayed at TMP and what he actually received from Connet; (d) the value of the equity interest in Connet which Connet promised to provide Uhrig; (e) the amount of cash and other

Casos Riley & Sansonson, LLP
One First Street, Suite 2
Los Altos, CA 94022
(650) 918-7200

1   compensation Uhrig would have received if Connet did not require to forsake client development in

2   favor of servicing Mel Connet's "clients;" and/or (f) the amount of "expenses" or "shared" revenue

3   allocations with Mel Connet improperly charged by Connet to Uhrig.

4                      2.      Holding Connet liable for punitive or exemplary damages.

5                      3.      Imposing equitable remedies in favor of Uhrig supported by the

6   law and the facts, including without limitation accounting, forfeiture, disgorgement, and/or

7   constructive trust with respect to: (a) the equity participations which should have been paid or

8   transferred to Uhrig by Connet; (b) all cash and other things of value attributable to what should

9   have been Uhrig's shared of the equity participations and/or cash fees; and/or (c) all of part of any

10  profits or other benefits Connet or any of its principals or affiliates will receive or have received

11  from transactions involving such equity participations; and/or (d) directing Connet to disgorge or

12  pay in damages an amount of case which is equal to the distributions Connet should have received as

13  an equity owner of Connet if Connet had abided by the Connet Inducements.

14                     4.      Awarding Uhrig the amount of his lost income and/or the profits

15  he should have earned as an equity owner of Connet; and/or

16                     5.      Awarding Uhrig his reasonable attorney's fees and costs as

17  allowed by the law and the facts; and/or

18                     6.      Awarding Uhrig pre-judgment and post-judgment interest as

19  allowed by the law and the facts; and/or

20                     7.      Awarding Uhrig all other relief available under the law and the

21  facts.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

## VII.

### DEMAND FOR JURY TRIAL

Counterclaimant Uhrig hereby demands a trial by jury in this matter.

Respectfully submitted,

CASAS RILEY & SIMONIAN, LLP

Dated:  July 11, 2008

By _____

Gregory C. Simonian, Esq.
Attorneys for Defendants,
Scott E. Uhrig and WhiteRock Partners

Of Counsel:

THE MAJORIE FIRM LIMTED PARTNERSHIP

Francis B. Majorie, P.C. (Texas Bar No. 12851420)
(Pro Hace Motion to be Filed)
3514 Cedar Springs Road
Dallas, TX 75219
Tel: 214-522-7400
Fax: 214-522-7911
fbmajorie@themajoriefirm.com