```
ERIC C. KASTNER (SBN 53858)
L. ROBIN GONZALEZ (SBN 176481)
KASTNER | BANCHERO LLP
2465 East Bayshore Road, Suite 405
Palo Alto, CA  94303
Telephone:    (650) 967-7854
Facsimile:    (650) 320-9640

Attorneys for Plaintiff and Counter-Defendant
CONNET & COMPANY LLC
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNET & COMPANY LLC<br><br>            Plaintiff,<br><br>    v.<br><br>SCOTT E. UHRIG, an individual,<br>WHITEROCK PARTNERS, an unknown<br>Texas business entity, STEPHANIE A.<br>YOUNG, an individual, TINA C. MOLOCK,<br>an individual, and DOES 1-50<br><br>            Defendant.<br><br>AND RELATED CROSS ACTIONS. | CASE NO.  C083366-MMC<br><br>**CONNET & COMPANY LLC'S<br>ANSWER TO COUNTERCLAIM OF<br>SCOTT E. UHRIG, INDIVIDUALLY<br>AND DOING BUSINESS AS<br>WHITEROCK PARTNERS**<br><br>**JURY TRIAL DEMANDED** |

Counter-Defendant CONNET & COMPANY LLC ("Connet" or Counter-Defendant), hereby answers the unverified Counterclaim of Defendant/Counter-Claimant SCOTT E. UHRIG, individually, and DBA WHITEROCK PARTNERS (individually "Uhrig" or collectively "Whiterock") as follows:

### COUNTERCLAIMS

    1.    Answering paragraph 65 of the Counterclaim, Connet lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein, and therefore

- 1 -

denies such allegations.

2. Answering paragraph 66 of the Counterclaim, upon information and belief Connet denies the allegations contained therein.

3. Answering paragraph 67 of the Counterclaim, Connet lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein, and therefore denies such allegations.

4. Answering paragraph 68 of the Counterclaim, upon information and belief Connet admits the allegations contained therein.

## BACKGROUND FACTS

**A.    Connet Recruits Uhrig to Leave His Job And Join Connet As A Partner With Equity Participation.**

5. Answering paragraph 69 of the Counterclaim, upon information and belief Connet states that prior to Uhrig's resignation from TMP Worldwide ("TMP") on or about February 28, 2001, Uhrig held the title of "principal," not "principal member." Upon information and belief, at that time the title of principal within the TMP organization was equivalent to a junior consultant role in the executive search industry, and by industry standards would designate a person who was not self sufficient (i.e.: had client consulting responsibilities but could not generate enough revenue on his own to cover their payroll, administrative and direct overhead costs.) Upon information and belief, Uhrig had approximately 2½ years of executive search industry experience at the time he was hired by Connet. According to the resume that Uhrig provided at the time he was being interviewed for employment with Connet, TMP was the fourth largest executive search firm in the United States. Upon information and belief, TMP experienced significant financial difficulty during the recession in the early 2000's, and TMP no longer exists today as an entity. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 69.

6. Answering paragraph 70 of the Counterclaim, upon information and belief during the late 2000 time period, Uhrig was actively seeking other employment and after an interview he failed to receive an offer from the Austin branch of Heidrick & Struggles ("H&S"). Upon

information and belief, during this period Uhrig contemplated leaving TMP with four other colleagues to start a new search firm and prepared a financial model for the new firm. Connet learned of Uhrig's availability and contacted him. During the interview process Connet learned that Uhrig was unhappy with TMP because he (a) was working all the time, (b) did not have any administrative resources and (c) did not have any associate help to leverage his recruiting efforts. In later conversations with Connet, Uhrig also claimed that the supervisor he worked for did not fairly share the revenue from searches Uhrig worked on. Uhrig represented to Connet during the interview process that he would be able to generate revenue such that he would be self sufficient at Connet. In his employment agreement, Uhrig affirmed the following representations:

> *You understand that you are expected to be a 'self-starter' and will take the initiative to originate and complete your assignments, and we have expectations that you will be able to conduct 10 or more searches per year.*

Uhrig also represented to Connet that he was able to generate business at TMP, although he indicated that he did not receive credit for the business because his supervisor did not fairly share the credit. Regarding his productivity at TMP and by implication his expected productivity at Connet, Uhrig stated in an email to Connet:

> *Our meeting Thursday got me to thinking about the number of searches on which I've worked and completion rates, etc., so I sat down this morning and ran some numbers. The results were enlightening and a bit surprising.*
>
> *I've done 37 searches with LAI/TMP - I think I had told you I worked on about 25. Of the 37, 31 were developed exclusively by me. 5 were co-developed. 1 was developed without my participation.*

Upon information and belief and to the best of Connet's recollection, Uhrig was unable to "exclusively develop" or "originate" any searches during the 26 months that he was employed by Connet. In addition, Uhrig failed to conduct an average of 10 assignments per year during his

tenure with Connet. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 70.

7. Answering paragraph 71 of the Counterclaim, Connet admits that in the 1999 and 2000 timeframe its goal was to build a "new kind of search firm" targeting "mission critical" client assignments. Connet admits that its objective, among others, was to (a) practice knowledge sharing, (b) emphasize cooperation, (c) operate virtually, (d) adopt policies and practices to discourage "candidate hoarding" and "client poaching" and (e) grow the organization. Connet also admits that an additional well publicized objective was "pay-for-performance." Connet admits that Jane Carmena had been hired. Connet admits that its goal was to rapidly grow the organization and upon information and belief Uhrig knew that this goal depended on the ability of Uhrig and others to be productive and profitable. Connet denies that there was any agreement or representation that guaranteed Uhrig would receive or be allowed to purchase an economic interest in Connet & Company LLC. Uhrig's employment agreement specifically states that "you will join our team as a full-time employee with the title of partner." Upon information and belief Uhrig understood that his employment agreement contained all the terms, conditions, rights and responsibilities of his relationship with Connet. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 71.

8. Answering paragraph 72 of the Counterclaim, Connet admits the representations on the website at the time referred to by Uhrig speak for themselves but were similar to those alleged in paragraph 72. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 72.

9. Answering paragraph 73 of the Counterclaim, Connet denies the "Connet Equity Promise", the "Equity Share Promise", and the "Partner Splits Promise." Upon information and belief Uhrig clearly understood that his employment agreement contained all the terms, conditions, rights and responsibilities of his relationship with Connet. The employment agreement included a Partner Cash Bonus Plan and the Equity Incentive Bonus Plan Summary and Administrative Guidelines that existed at the time and were provided to Uhrig. The employment agreement also provided:

- 4 -

> *Our fringe benefit programs, bonus programs, participating equity programs, and policies are reviewed from time to time and may be modified or amended by the Firm at any time. All bonuses described in this letter are discretionary and are not earned in whole or part unless you are employed on the date they are paid.*

Connet denies guaranteeing Uhrig a "draw." Uhrig's employment agreement clearly stated that he was paid a base salary, not a draw, of $180,000 per year, plus potential bonuses and other benefits. Connet denies the "Client Development Promise." Upon information and belief Uhrig clearly understood that the development of a "book of business" and at least being self sufficient was a requirement by Connet and that Uhrig's inability to do so would likely limit the tenure of his employment with Connet. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 73.

10. Answering paragraph 74 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 73 as if fully set forth herein. Connet denies the "Connet Inducements" and believes Uhrig joined Connet because (a) he was unhappy at TMP and wanted to leave, (b) Connet offered him, as noted in the employment agreement, dedicated administrative support and other resources from which he could leverage his efforts, and (c) Connet's bonus payout plan, based on productivity, was more generous than TMP's plan. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 74.

11. Answering paragraph 75 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 74 as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 75.

12. Answering paragraph 76 of the Counterclaim, Connet admits Uhrig began working for it in March, 2001.

13. Answering paragraph 77 of the Counterclaim, Connet admits that it publically promoted Uhrig. As noted in Uhrig's employment agreement, Connet agreed to "use my best efforts to promote your search practice and establish your reputation."

14. Answering paragraph 78 of the Counterclaim, Connet admits that he held Uhrig out as an employee with the title of partner, which is what Connet agreed to do in Uhrig's employment agreement.

15. Answering paragraph 79 of the Counterclaim, Connet admits the report was signed by the Mel Connet, Jane Carmena, and Scott Uhrig. At the time, these were the only individuals at Connet who had client consulting responsibilities and therefore all carried the title of "partner."

16. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 78.

17. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 79.

**B.    Connet Fails To Deliver What It Represented And Promised**

18. Answering paragraph 80 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 79 as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 80.

19. Answering paragraph 81 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 80 as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 81.

20. Answering paragraph 82 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 81 as if fully set forth herein. Connet denies the "Connet Equity Promise." Except as otherwise admitted or qualified therein,, Connet denies the allegations contained in Paragraph 82.

21. Answering paragraph 83 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 82 as if fully set forth herein. Connet denies the "Equity Share Promise." Connet admits that Uhrig, pursuant to his employment agreement, was eligible for Connet's Equity Incentive Bonus Plan. Upon information and belief and to the best of Connet's recollection, Uhrig did not receive a distribution from this plan because he did not qualify for one pursuant to the terms of the plan. Except as otherwise admitted or qualified therein, Connet

denies the allegations contained in Paragraph 83.

22. Answering paragraph 84 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 83 as if fully set forth herein. Connet denies the "Partners Splits Promise." Connet admits that Uhrig, pursuant to his employment agreement, was eligible for Connet's Cash Bonus Plan. To the best of Connet's recollection, Uhrig received whatever distribution he was entitled to pursuant to the terms of the plan. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 84.

23. Answering paragraph 85 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 84 as if fully set forth herein. Connet denies the "Client Development Promise" because it was not a promise but a requirement in order for Uhrig to maintain his employment in good status. The fact that Uhrig "worked on client matters originated by Mel Connet" is a common practice in the executive search industry for consultants who are developing their skills. The "credit" sharing is a common practice in the industry. Connet's credit sharing policy was well known within Connet, and was more generous than typically found in the industry. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 85.

24. Answering paragraph 86 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 85 as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 86.

C. **Connet Refuses To Make Good, And Uhrig Leaves**

25. Answering paragraph 87 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 86 as if fully set forth herein. Connet denies that Uhrig was entitled to receive "substantially more cash and other consideration" from Connet. Upon information and belief Uhrig has received everything he was due pursuant to his employment agreement. Uhrig never complained about his compensation or suggested that he was due more during his employment with Connet. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 87.

26. Answering paragraph 88 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 87 as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 88.

27. Answering paragraph 89 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 86 as if fully set forth herein. Connet lacks sufficient knowledge or information to form a belief as to what Uhrig claims he did to "obtain the benefit of his bargain with Connet" and on that basis denies such allegations. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 89.

28. Answering paragraph 90 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 89 as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 90.

29. Answering paragraph 91 of the Counterclaim, Connet incorporates its responses to paragraphs 69 through 90 as if fully set forth herein. Connet denies that Uhrig was ever given a "draw." Connet admits that Uhrig received a base salary of $180,000 when he was hired. In August 2002, after 17 months of employment, Connet and Uhrig had a performance review meeting. At this meeting, Connet expressed his disappointment that Uhrig had not been able to develop any business, that he was not self sufficient and that Connet could no longer afford to carry him. Connet gave Uhrig the option of either transitioning out of Connet or going on a commission basis rather than a salary. Uhrig elected to go on a commission basis, with Connet continuing to pay for Uhrig's insurance, administrative and support costs and allowing Urhig use of the Connet's brand, noting in his email acceptance:

> *I've decide that I'd like to stay at Connet and see what kind of business I can develop between now and the end of the year.*

Nine months later, on or about May 6, 2003, despite having focused almost exclusively on business development activities and still not originating a even a single search assignment, Uhrig resigned from Connet, noting:

- 8 -

ANSWER OF CONNET & CO.'S ANSWER TO COUNTER-CLAIM OF UHRIG DBA WHITEROCK PARTNERS
Case No. C 08-03366 MMC

> *... I don't think I'm a good fit for the Connet platform right now. You need a couple of $1M+ billers on which you can start to build a consistent revenue base, not someone who is still building toward self sufficiency.*

Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 91.

30. Answering paragraph 92 of the Counterclaim, Connet admits that Uhrig resigned from Connet & Company on May 6, 2003. Connet lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 92, and on that basis denies such allegations.

31. Answering paragraph 93 of the Counterclaim, Connet incorporates its responses to paragraphs 65 through 92, as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 93.

## CLAIMS FOR RELIEF

A. **FIRST CAUSE OF ACTION**

(Breach of Contract/Promissory Estoppel)

32. Answering paragraph 94 of the Counterclaim, Connet admits it was a party to a valid and binding written contracts with Uhrig, entered into and signed by Uhrig on or about January 27, 2001 and February 11, 2001. Uhrig also read, understood and accepted the obligation imposed on him under the Connet Employee's Handbook. Connet incorporates its responses to paragraphs 65 through 93, as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 94.

33. Answering paragraph 95 of the Counterclaim, Connet incorporates its responses to paragraphs 65 through 94, as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 95.

34. Answering paragraph 96 of the Counterclaim, Connet incorporates its responses to paragraphs 65 through 95, as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 96.

35. Answering paragraph 97 of the Counterclaim, Connet denies the allegations

1 | contained Paragraph 97.

2 |     36.    Answering paragraph 98 of the Counterclaim, Connet denies the allegations contained in Paragraph 98.

### B. SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

37. Answering paragraph 99 of the Counterclaim, Connet incorporates its responses to paragraphs 65 through 98, as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 99.

38. Answering paragraph 100 of the Counterclaim, Connet denies the allegations contained in Paragraph 100.

39. Answering paragraph 101 of the Counterclaim, Connet denies the allegations contained in Paragraph 101.

### C. THIRD CAUSE OF ACTION
### (Unjust Enrichment)

40. Answering paragraph 102 of the Counterclaim, Connet denies the allegations contained therein.

41. Answering paragraph 103 of the Counterclaim, Connet denies the allegations contained therein.

### D. FOURTH AND FIFTH CAUSE(S) OF ACTION
### (Intentional and/or Negligent Misrepresentation)

42. Answering paragraph 104 of the Counterclaim, Connet incorporates its responses to paragraphs 65 through 103, as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 104.

43. Answering paragraph 105 of the Counterclaim, Connet incorporates its responses to paragraphs 65 through 104, as if fully set forth herein. Except as otherwise admitted or qualified therein, Connet denies the allegations contained in Paragraph 105.

44. Answering paragraph 106 of the Counterclaim, Connet incorporates its responses to paragraphs 65 through 107, as if fully set forth herein. Connet lacks information and

1  knowledge as to what "Uhrig has since discovered" and except as otherwise admitted or
2  qualified therein, Connet denies the allegations contained in Paragraph 106.
3      45.   Answering paragraph 107 of the Counterclaim, Connet denies the allegations
4  contained therein.
5      46.   Answering paragraph 108 of the Counterclaim, Connet denies the allegations
6  contained in Paragraph 108.

7  **E.   SIXTH CAUSE OF ACTION**
8  **(Accounting)**
9      47.   Answering paragraph 109 of the Counterclaim, Connet denies the allegations
10 contained in Paragraph 109.

11 **F.   SEVENTH CAUSE OF ACTION**
12 **(Misappropriation/Misuse of Uhrig Accounts)**
13     48.   Answering paragraph 110 of the Counterclaim, Connet denies the allegations
14 contained therein.
15     49.   Answering paragraph 111 of the Counterclaim, Connet denies the allegations
16 contained therein.

17                    **PRAYER FOR RELIEF**
18     50.   Answering paragraph 112 of the Counterclaim, Connet incorporates its responses
19 to paragraphs 65 through 111, as if fully set forth herein. Except as otherwise admitted or
20 qualified therein, Connet denies the allegations contained in Paragraph 112.

21                    **AFFIRMATIVE DEFENSES**
22     51.   AS A FIRST, SEPARATE AND AFFIRMATIVE DEFENSE TO THE
23 COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION
24 CONTAINED THEREIN, this answering Counter-Defendant alleges that said Counterclaim, and
25 each cause of action therein, fails to state facts sufficient to constitute a cause of action against
26 this answering Counter-Defendant.
27     52.   AS A SECOND, SEPARATE AND AFFIRMATIVE DEFENSE TO THE
28 COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION

CONTAINED THEREIN, this answering Counter-Defendant alleges that said Counterclaim is barred by the Doctrine of Estoppel.

53. AS A THIRD, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that said Counterclaim is barred by the Doctrine of Laches.

54. AS A FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that said Counterclaim is barred by the Doctrine of Unclean Hands.

55. AS A FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that Counterclaimant has waived and is estopped and barred from alleging the matters set forth in the Counterclaim.

56. AS A SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that at all times and places mentioned in the Counterclaim herein, Counterclaimant failed to perform certain conditions precedent to the duty of Counter-Defendant. These conditions precedent were imposed upon the Counterclaimant by contract. The non-performance of said conditions excused Counter-Defendant's obligations under the contract and has given the Counter-Defendant the right of disaffirmance, rescission and release; Counterclaimant is therefore barred from recovery herein.

57. AS A SEVENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that at all times and places mentioned in the complaint herein, Counterclaimant failed to mitigate the amount of his damages. The damages claimed by Counterclaimant could have been mitigated by due diligence

on his part or by one acting under similar circumstances. The Counterclaimant's failure to mitigate is a bar to his recovery under the Counterclaim.

58.  AS AN EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that it was informed and believes that the causes of action asserted in the Counterclaim were settled, satisfied, extinguished and supported by adequate consideration prior to the serving of the within lawsuit on this Counter-Defendant, and the prior settlement operates to bar the same.

59.  AS A NINTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that the causes of action set forth in the Counterclaim are, and each of them is, barred by the applicable statute of limitations provisions of the Code of Civil Procedure of the State of California, including but not limited to Sections 337, 338, 339, 340 and 343.

60.  AS A TENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that said Counterclaimant is barred by the Doctrine of Impossibility and Impracticability.

61.  AS AN ELEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant incorporates each and every allegation of the Counterclaim filed herein for Counter-Defendant against Counterclaimant and other Counter-Defendants including Whiterock Partners and Scott Uhrig as a set-off against any damages to Counterclaimant by Counter-Defendant pursuant to this action.

62.  AS A TWELFTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges on information and belief

that Counterclaimant cannot assert any contractual claims set forth in his Counterclaim because Counterclaimant prevented performance of such contracts.

63. AS A THIRTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that there was a failure of consideration for claims and agreements Counterclaimant seeks to enforce, caused by Counterclaimant and that said failure of consideration bars Counterclaimant's rights to relief.

64. AS A FOURTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that Counterclaimant is not entitled to any compensation, profits, equity share, fees, costs, bonuses, draw or any kind, from Counter-Defendant. .

65. AS A SIXTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that Counterclaimant was paid all earned wages, bonuses, compensation and paid time off, if any.

66. AS A SEVENTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges the Counterclaim and each cause of action therein fails to state a valid claim for penalties, punitive, exemplary or liquidated damages. Counter-Defendant has made good faith efforts to comply with the law and as such even if, *arguendo*, Counterclaimant could establish any of the claims alleged in the Counterclaim, there has been no willful violation of law.

67. AS AN EIGHTEENTH SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that at all times and places mentioned in the Counterclaim herein, Counterclaimant by his past conduct, past declarations, past arguments, deeds and judgments, acted with the intent to deliberately lead the Counter-

1  Defendant into a position of helplessness. Said Counter-Defendant believed the representations
2  of Counterclaimant and acted upon such belief to the detriment of Counter-Defendant. To
3  permit Counterclaimant to prevail would work as injustice and therefore this answering Counter-
4  Defendant asks the Court to protect it in equity by decreeing that Counterclaimant has waived his
5  rights, if any. The conduct of Counterclaimant acts to bar by estoppel his right to complain at the
6  present time.

7  68.  AS A NINETEENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE
8  COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION
9  CONTAINED THEREIN, this answering Counter-Defendant alleges Counterclaimant cannot
10 assert any contractual claims set forth in the complaint because Counterclaimant prevented
11 performance of such contract.

12 69.  AS A TWENTIETH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE
13 COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION
14 CONTAINED THEREIN, this answering Counter-Defendant alleges Counterclaimant cannot
15 assert any of the contractual claims set forth in the Counterclaim because Counterclaimant
16 materially breached said contract.

17 70.  AS A TWENTY-FIRST SEPARATE AND AFFIRMATIVE DEFENSE TO THE
18 COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION
19 CONTAINED THEREIN, this answering Counter-Defendant alleges that the Counterclaim, to
20 the extent that it seeks exemplary or punitive damages pursuant to section 3294 of the Civil
21 Code, violates Counter-Defendant's right to procedural due process under the Fourteenth
22 Amendment of the United States Constitution, and the Constitution of the State of California,
23 and therefore fails to state a cause of action upon which either punitive or exemplary damages
24 can be awarded.

25 71.  AS A TWENTY-SECOND, SEPARATE AND AFFIRMATIVE DEFENSE TO
26 THE COUNTERCLAIM ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF
27 ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that the
28 Counterclaim, to the extent that it seeks punitive or exemplary damages pursuant to section 3294

of the Civil Code, violates Counter-Defendant's rights to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution and Article I, Section 17, of the Constitution of the State of California, and violates Counter-Defendant's rights to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of California, and therefore fails to state a cause of action supporting the punitive or exemplary damages claimed.

72.  AS A TWENTY-THIRD, SEPARATE AND AFFIRMATIVE DEFENSE TO THE CROSS-OMPLAINT ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that Counterclaimant should be denied recovery under the Counterclaim, and each cause of action thereof, because Counterclaimant's conduct was manifestly unreasonable.

73.  AS A TWENTY-FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that its conduct was not the cause in fact or the proximate cause of any of the losses alleged by Counterclaimant.

74.  AS A TWENTY-FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that the damages and injuries claimed by Counterclaimant were either wholly or in part caused by persons, firms, corporations or entities other than this answering Counter-Defendant, and said negligence is either imputed to Counterclaimant by reason of the relationship of said parties to Counterclaimant and/or said negligence comparatively reduces the percentage of negligence, if any, by this answering Counter-Defendant.

75.  AS A TWENTY-SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that the damages and injuries claimed by Counterclaimant were either wholly or in part caused by persons, firms, corporations or entities other than this answering Counter-Defendant. Counter-Defendant

therefore requests that in the event of finding of liability in favor of Cross-Complainant, or settlement or judgment, an apportionment of fault be made among all other parties or persons at fault. Counter-Defendant further requests a judgment and declaration of indemnification and contribution against all other parties or persons in accordance with the apportionment of fault.

76. AS A TWENTY-SEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COMPLAINT ON FILE HEREIN AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges on information and belief that the sole and proximate cause of the incident complained of by Counterclaimant was due to the act and/or omissions of persons and entities other than this answering Counter-Defendant.

77. AS A TWENTY-EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that enforcement of the agreements alleged in the Counterclaim would work as forfeiture, and that the alleged agreement should not therefore be enforced in equity as against Counter-Defendant.

78. AS A TWENTY-NINTH, SEPARATE AND AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM ON FILE HEREIN, AND TO EACH ALLEGED CAUSE OF ACTION CONTAINED THEREIN, this answering Counter-Defendant alleges that Counterclaimant has failed to perform pursuant to the terms and conditions of that contracts alleged, thereby depriving Counter-Defendant of the benefit of its bargain.

WHEREFORE, this answering Counter-Defendant prays for judgment as follows:

1. That Counterclaimant takes nothing by his Counterclaim;
2. For reasonable attorney's fees;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff and Counter-Defendant Connet & Company LLC hereby demands a jury trial in this matter.

DATED: August 11, 2008

                         KASTNER | BANCHERO, LLP

By: _____
    Eric C. Kastner
    L. Robin Gonzalez
    Attorneys for Plaintiff and Counter-Defendant
    CONNET & COMPANY LLC